

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

*Rod J. Rosenstein*
*United States Attorney*

*Judson T. Mihok*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4903*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*
*Judson.Mihok@usdoj.gov*

February 21, 2012

Ronald Kurland
10 E. Chase Street
Baltimore, MD 21202

    Re:    <u>United States v. Roger Allen Repp III</u>, Criminal No. CCB 11-0645

Dear Mr. Kurland:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 9, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

    1.    The Defendant agrees to plead guilty to the Count One of the Indictment which charges him with Sexually Exploiting a Minor for the Purpose of Producing Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

<u>Elements of the Offense</u>

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    That on or about the dates specified in the Indictment in the District of Maryland, the Defendant:

1



      a.      Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

      b.      For the purpose of producing a visual depiction of such conduct;

      c.      And the Defendant had reason to know that the materials used to produce the visual depictions were transported in interstate and foreign commerce.

3.      <u>Penalties</u>

      a.      The sentence provided by statute for the offense to which your client is pleading guilty is as follows: not less than fifteen (15) years and not more than thirty (30) years imprisonment, a $250,000 fine, and supervised release for 5 years to life. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

      b.      The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

<u>Waiver of Rights</u>

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

      a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a.   The base offense level is thirty-two (32) pursuant to U.S.S.G.§2G2.1(a).

   b.   Pursuant to U.S.S.G. §2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was over 12 but under 16 years old at the time of the offense.

   c.   Pursuant to U.S.S.G. §2G2.1(b)(3), there is a two (2) level increase because the offense involved distribution.

   d.   Pursuant to U.S.S.G. §2G2.1(5), there is a two (2) level increase because the minor was in the custody, care or supervisory control of the defendant.

   e.   Because the child pornography was produced on five or more occasions, and the conduct specifically does not group pursuant to U.S.S.G. § 3D1.2, there is a five level adjustment pursuant to U.S.S.G. § 3D1.4.

Before any adjustment for acceptance of responsibility, the adjusted offense level is forty-three (43).

7.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea

4



of guilty.

**The final adjusted offense level, therefore, is forty (40).**

        8.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

        9.     This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, there should be a no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

        10.     At the time of sentencing, the United States Attorney's Office will recommend a reasonable sentence, likely within the contemplated advisory Sentencing Guidelines range, plus a lifetime period of supervised release.

        11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Waiver of Appeal

        12.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. §1291 or otherwise, to appeal the Defendant's conviction.

        b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the U.S.S.G. range provided for at adjusted offense level 40, taking into consideration the Defendant's Criminal History Category; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below the U.S.S.G. range provided for at adjusted offense level 40, taking into consideration the Defendant's Criminal History Category.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

<u>Obstruction or Other Violations of Law</u>

13. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

<u>Court Not a Party</u>

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding



prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

15. The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on April 22, 2011, including, but not limited to: one HP laptop G60, s/n: 2CE01914G3 and power cord; one Optima Pro PNY Attache 8GB; one Western Digital external hard drive "My Passport", s/n: WXG0A99Y1511, and charger; one Kodak EasyShare C743 Digital Camera, s/n: KCGGH64532852, containing a 1GB SanDisk SD card, s/n: G01GNMC780104; and one Canon PowerShot SX30 IS Digital Camera, s/n: 112032007275, containing a 4GB SanDisk Ultra SD Card, s/n: BH1018316070D. The Defendant further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

### Restitution

16. For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Entire Agreement

17. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please

sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,<br>
Rod J. Rosenstein<br>
United States Attorney<br>
<br>
By: _____<br>
Judson T. Mihok<br>
Assistant United States Attorney

  I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/2/12
Date

_____
Roger Allen Repp III

  I am Mr. Repp's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

2-2-12
Date

_____
Ronald Kurland, Esq.

8

## ATTACHMENT A-STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Roger Allen Repp III, age 45, formerly was a resident of Hagerstown, Maryland.

Repp produced numerous sexually explicit and lascivious photographs of a 13 year old girl in his care, custody and control via a pinhole camera he set up in her bedroom and bathroom. He then distributed those images to other pedophiles via a file sharing program over the Internet in return for other child pornography being sent to him.. But for discovery of P2P file sharing activities via an undercover investigation, the production and distribution of this pornography over the Internet might never have been discovered as the images were covertly recorded without the child's knowledge while the child was using the restroom and/or in the privacy of her bedroom.

As a result of the undercover operation, a search warrant was executed on the Defendant's residence in Hagerstown, Maryland, on April 22, 2011, by members of the Maryland State Police Department Computer Crimes Unit. The search warrant was premised on the work of two separate investigators, both of whom had used a publicly available P2P file sharing program, and had downloaded images and videos of other child pornography from IP addresses assigned to the Verizon Internet Services account in the Defendant's name at his residence. The first download was by the FBI on March 11, 2011 and the second download was by Canadian law enforcement on March 16, 2011.

The Defendant was present when the search warrant was executed on April 22, 2011. After being advised that he was free to leave at any time and that he did not have to speak to the interviewing investigator, the Defendant agreed to be interviewed, and stated in sum and substance that he likes to look at teens and advised that his preference is ages 11 to 15 years old because of how their bodies look. At that age, the Defendant stated, they are tiny and just beginning to develop, that he likes that, and that their bodies are "perfect." The Defendant stated that he does not act upon these urges, that he looks at children, but has never had sex with a minor. The Defendant stated that he has been looking at child pornography for "a couple of years" and that he realized it was a problem and that he did not take steps to stop it. He stated that he used the publicly available P2P file sharing program and that his username is "11to15forme," that he is online all day, and that everything the police are looking for will be found on his computer or his red external hard drive. The Defendant admitted that he downloaded and shared child pornography, had over 100 GB of child pornography and other various files that interested him, and that over 95% of his images contain children under the age of 18. The Defendant acknowledged that he masturbated to the images. The Defendant did not disclose his secret camera.

The items seized from the residence included a HP laptop computer, a Compaq laptop

9

computer, a red Western Digital external hard drive, an Optima Attache thumb drive, four CD-Rs, five VHS tapes and one billing statement. The only camera seized was a web camera built within the HP laptop computer. The red Western Digital external hard drive was connected to the HP laptop computer when the investigators executed the search warrant at the residence.

The forensic examination of the red Western Digital external hard drive seized from the residence revealed numerous child pornography files. The examination also revealed approximately 125 video files that depict the 13 year old minor female, hereinafter "Jane Doe" in her bedroom and bathroom that the Defendant created. The 125 videos were taken from several hidden cameras, at times operating simultaneously, located in each room, and taken from various angles. The videos depict Jane Doe in various stages of undressing and dressing, showering, and using the restroom. The focal point of the videos was the genital area of Jane Doe. In numerous videos, the Defendant is recorded while setting up various cameras in the rooms and removing the cameras from their locations after they had recorded Jane Doe. The titles of some of the videos include terms such as "pinhole", "bedroom closet", "underbed", "overhead", and "bathroomundersink". The forensic analysis also showed that the HP laptop computer had been used to access other removable media, including, but not limited to, the following: an EKEN Video Camera USB device; a Generic USB device; a Hitachi DK23EA-20 USB device; a Syntek USB MSDC (micro SD card) USB device; a Western Digital USB device; and a PNY USB 2.0 USB device. The Western Digital USB device and the PNY USB device were seized on April 22, 2011, during execution of the search warrant, but the remaining four items are still unaccounted for. The PNY USB device also contained numerous child pornography files and two videos of the 13 year old victim.

Forensic examination also revealed various chat logs between the Defendant, using screen name "11to15forme", and others, where the Defendant is sharing the videos in question with others and looking for the other individuals to share files with him. Below is a summary of some of the messages that were sent by the Defendant where specific references to the minor female have been replaced by "Jane Doe":

- there is a folder up called hid cam. See if you like any of that. i have other things to add. Just need time.
- hello, wondering what age you enjoy most. i have hid cam of [Jane Doe]. i have some other things depending on your taste.
- i do have vids. i only ask you not share her. anything else i have is fair game.
- the folders nemo and nemo2 pass = fish. there is a vid and a couple pics of [Jane Doe] in nemo
- if u like [Jane Doe], i have more vids
- well let me know if you like the vid. i will give you more for what you have in your folders.
- i have [Jane Doe]. hid cam. a preview 4 u. folder jbgirllove. no pass. i do not share or repost others and i like the same courtesy.
- there is a vid there. it is titled 01052011bedrrom. second file on the first row.
- grab bad vids i do not care what you do with. the pass is qwerty. the nemo1 album

- pass is fish. you will see [Jane Doe] in some of those. i ask you do not share her others r ok.
- if you like [Jane Doe], big boobs and hairy puss, i can make a folder for u and just per stuff in there. just let me know.

A folder titled Nemo1 was found on the Western Digital external hard drive. The folder contained and contained approximately 800 images, some of which contain child pornography.

Accordingly, the Defendant, ROGER ALLEN REPP, III, knowingly used Jane Doe, without her knowledge, to engage in sexually explicit conduct for the purpose of producing the visual depiction of such conduct. The pin-hole cameras REPP used to record Jane Doe engaged in sexually explicit conduct and laptop computer REPP used to distribute the same videos were manufactured outside Maryland. REPP knowingly caused the images to be transported in interstate commerce via the internet. Further, at the time of the offense, Jane Doe was younger than 16 but older than 12 years old, and REPP knowingly produced said images at a time when the victim was in his custody, care and supervisory control.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

2/2/12
Date

Roger Allen Repp, III

2-2-12
Date

Ronald Kurland, Esq.

11